IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CASE NO. CR505-019 |
| v. ) | |
| GARY LYNN AUSTIN ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Gary Lynn Austin ("Austin") is charged with illegal possession of listed chemicals, in violation of 21 U.S.C. § 841(c)(2). Austin filed a Motion to Suppress, and the Government filed a Response. The undersigned conducted an evidentiary hearing on March 7, 2006, at which Scott Harper ("Harper"), a Detective with the Coffee County Sheriff's Office, and Stephen Tinsley ("Tinsley"), a Special Agent with the Drug Enforcement Agency, testified. Austin filed a post-hearing Brief.

### FINDINGS OF FACT

The credible testimony at the evidentiary hearing established the following:

Harper was working with an informant from whom he has received reliable information on previous occasions. The informant contacted Harper and told him that her stepfather knew of someone who was trying to "unload a large amount of pseudoephedrine." (Doc. No. 29, p. 5.) Harper stated that the informant told him that her stepfather saw a large amount of pseudoephedrine in an ammo can with this person; the informant asked Harper if her stepfather could arrange a deal with this person. Harper told

AO 72A
(Rev. 8/82)

the informant that was permissible, and she put Harper in contact with her stepfather. Harper stated that he spoke to the stepfather several times, and he provided information concerning Austin.

The stepfather told Harper that Austin showed him a large green ammo can "filled to the top" with approximately 3,700 pseudoephedrine tablets. (Doc. No. 29, p. 6.) The stepfather said that Austin wanted to swap the pseudoephedrine tablets for methamphetamine tablets. Harper permitted the stepfather to arrange a deal with Austin; the stepfather called Harper later and stated that he and Austin agreed to meet at a truck stop on the 206 Connector in Douglas, Georgia. The stepfather provided a description of the red S-10 pickup truck Austin would be driving, and he told Harper the two were going to meet at 10:30 p.m. that night.

Harper and two other police officers were waiting in an unmarked vehicle about one hundred (100) yards from Austin's house. Harper testified that he noticed a red S-10 pickup truck pull out of Austin's yard at approximately 10:20 to 10:25 p.m. and was traveling toward Douglas. Harper also testified that he and the other officers followed the pickup truck, which made a couple of turns and was headed for the location where the stepfather told Harper he was supposed to meet Austin. Harper stated that Deputy Phillip Ellis, who was also with the Coffee County Sheriff's Office, was in his car about one-quarter (1/4) of a mile from the truck stop; once the pickup truck passed Ellis' vehicle, Harper told Ellis to initiate a stop of the truck. Harper testified that he believed he had reasonable suspicion to justify a brief detention of Austin based on the totality of the information regarding the nature, location, and timing of the deal, the person involved, and the vehicle this person would be driving.

2

Harper testified that Austin was standing at the rear of the truck as he arrived at the scene of the stop. Harper approached Austin and told him that he received information that he was carrying a large quantity of pseudoephedrine; Harper asked Austin if he minded if Harper and the other officers searched his truck. Austin said, "[N]o, go ahead." (Doc. No. 29, p. 9.) Harper stated that one of the other officers was searching a toolbox and called him over to where the toolbox was. The officer found a large green ammo can, and when the officer took the top off of the can, it "was just as full as you could get it of pseudoephedrine pills." (Id.) Harper stated that he was told there were 3,700 pills, and when he and the other officers counted them, there were 3,648 pills.

Tinsley testified that, before conducting an interview of Austin, Austin was read his Miranda[1] rights. Tinsley also testified that Special Agent America Lopez had a written waiver form, which she read to Austin. Tinsley stated that Austin signed this form, which indicated that he wished to speak to Tinsley and Lopez. While Tinsley stated that Austin was not fully cooperative, he did provide a statement. Tinsley also stated that he terminated the interview when Austin indicated that he wanted to speak to an attorney before he answered any specific questions. Prior to Austin making a request for an attorney, Austin informed Tinsley that he bought the pseudoephedrine pills at a wholesale warehouse in Brunswick, Georgia. (Doc. No. 29, p. 22.)

Austin contends that the search of his vehicle violated his Fourth Amendment privilege against unlawful searches and seizures. Austin also contends that the "in

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

custody" interrogation violated his Fifth Amendment privilege against self-incrimination. (Doc. No. 30, pp. 1-2.)

## DISCUSSION AND CITATION OF AUTHORITY

I.  **The Terry Stop and Subsequent Consent to Search.**

There are three types of police-citizen encounters "which invoke the [F]ourth [A]mendment: police-citizen communications involving no coercion or detention; brief seizures or investigative detentions; and full-scale arrests." United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989). Investigative detentions involve "reasonably brief encounters in which a reasonable person would have believed that he or she was not free to leave." Id. (citing Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). "In order to justify a [F]ourth [A]mendment seizure, the government must show a reasonable and articulable suspicion that the person has committed or is about to commit a crime." Id.

Additionally, "[a] warrantless search is *per se* unreasonable under the Fourth Amendment unless it falls within one of several specifically established and well-delineated exceptions." Holmes v. Kucynda, 321 F.3d 1069, 1082 (11th Cir. 2003) (citing Mincey v. Arizona, 437 U.S. 385, 390, 98 S. Ct. 2408, 2412, 57 L. Ed. 2d 290 (1978)). An exception to the general rule against a warrantless search is a search made pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44, 36 L. Ed.2d 854 (1973). Consent must be freely given, and the totality of the circumstances determines whether the consent was knowingly and voluntarily given. United States v. Ramirez-Chilel, 289 F.3d 744, 752-53 (11th Cir. 2002).

4

The totality of the circumstances indicates that Harper had a reasonable and articulable suspicion to believe that Austin was attempting to trade his pseudoephedrine pills for methamphetamine. Harper had information that Austin would be driving a red S-10 pickup truck and was going to meet Harper's informant's stepfather at a truck stop on the 206 Connector in Douglas, Georgia. Harper also had information that Austin was in possession of a green ammo box which contained approximately 3,700 pseudoephedrine pills. Harper received this information from the stepfather of an informant who had provided him with information on previous occasions which led to case investigations and/or arrests. Accordingly, officers were justified in stopping Austin's vehicle. After stopping Austin's vehicle, Harper asked Austin if the officers could search his vehicle. The credible evidence before the Court reveals that Austin gave Harper consent for the search of his vehicle. There is no evidence before the Court which indicates that Austin's consent was not knowingly and voluntarily given. Officers had reasonable suspicion to stop Austin, and Austin consented to the search of his truck. Austin's Motion to Suppress evidence should be denied. Any and all evidence obtained as a result of this search should be admissible against Austin during the trial of this case.

II.     **The Waiver of <u>Miranda</u> Rights**.

"No person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." <u>Miranda v. Arizona</u>, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966). Custodial interrogation means "questioning initiated by law enforcement

5

officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id.

"As with most rights, the accused may waive the right against self-incrimination, so long as the waiver is voluntary, knowing, and intelligent. A waiver is effective where the 'totality of the circumstances surrounding the interrogation reveal[s] both an uncoerced choice and the requisite level of comprehension.'" United States v. Goodman, 147 Fed. Appx. 96, 101 (11th Cir. 2005) (quoting Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed. 2d 410 (1986)). "[T]he burden of showing admissibility rests . . . on the prosecution. The prosecution bears the burden of proving, at least by a preponderance of the evidence, the Miranda waiver and the voluntariness of the confession." Missouri v. Seibert, 542 U.S. 600, 608, 124 S. Ct. 2601, 2608 n.1, 159 L. Ed. 2d 643 (2004) (internal citations and punctuation omitted).

The evidence before the Court reveals that Austin was advised of his Miranda rights and waived those rights. In so doing, Austin agreed to speak with Special Agents Tinsley and Lopez. Once Austin stated that he did not want to answer any other questions, Tinsley terminated the interview. The uncontroverted evidence before the Court reveals that Austin was advised of his Miranda rights, he knowingly waived his Miranda rights, and that the interview ceased once Austin stated he did not wish to answer any further questions. Austin's Motion to Suppress statements should be denied. Any statements Austin made to officers after waiving his Miranda rights should be admissible during the trial of this case.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Austin's Motion to Suppress (Doc. No. 15) be **DENIED**.

So **REPORTED** and **RECOMMENDED**, this 20th day of June, 2006.

_____
JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)